IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| LAURA MONIQUE NIX, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> SOCIAL SECURITY ADMINISTRATION, ) <br> ) <br> Defendant. ) | No. 3:15-cv-00967 <br> Senior Judge Haynes |

## AMENDED MEMORANDUM

Plaintiff, Laura Monique Nix, filed this action under 42 U.S.C. §§405(g) and 1383(c) against the Defendant, Carolyn W. Colvin, Acting Commissioner of Social Security, seeking judicial review of the Commissioner's decision denying Plaintiff's applications for disability insurance benefits and supplement security income ("SSI") under Title II and Title XVI of the Social Security Act. Plaintiff's applications asserted a disability based upon a combination of severe physical and mental impairments with an onset date of October 1, 2011. (Docket Entry No. 11, Administrative Record, at 17). Plaintiff's applications were denied initially and upon reconsideration. Id. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). Id. After an evidentiary hearing, the ALJ found that Plaintiff's impairments did not satisfy the requirements for a disability under the Act. The ALJ found, in essence:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2012.

2. The claimant has not engaged in substantial gainful activity since October 1, 2011, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

\* \* \*

3. The claimant has the following severe impairments: degenerative disc

disease, degenerative joint disease of the knees, Baker's cyst, chronic obstructive pulmonary disease (COPD), hypertension, irritable bowel syndrome, and anxiety (20 CFR 404.1520(c) and 416.920(c)).

\* \* \*

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1(20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

\* \* \*

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except for lifting/carrying 10 pounds occasionally and 5 pounds frequently; standing/walking 6 hours; and sitting 6 hours; and is able to understand, remember and complete high-level detailed tasks.

\* \* \*

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

\* \* \*

7. The claimant was born on April 1, 1972 and was 39 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569,

404.1569(a), 416.969, and 416.969(a)).

\* \* \*

11. The claimant has not been under a disability, as defined in the Social Security Act, from October 1, 2011, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

Id. at 19-21, 28-29. The Appeals Council denied Plaintiff's request for review. Id. at 1.

Before the Court is Plaintiff's motion for judgment on the administrative record (Docket Entry No. 13), contending, in sum: (1) that the ALJ erred in weighing the opinion of a treating physician; (2) that the ALJ failed to include mental limitations on Plaintiff's RFC based on his own finding; and (3) that the ALJ erred in seven other ways. In response (Docket Entry No. 15), the Commissioner contends that the ALJ correctly decided each of these issues.

## A. Review of the Record

Plaintiff was born on April 1, 1972, and was 39 years old on her alleged disability onset date. Plaintiff, who left high school in the eleventh grade, obtained a general equivalency diploma. Id. at 59-60. Plaintiff previously worked as a service advisor clerk or cashier with various automobile companies or automobile rentals and Walmart's lube and oil department. Id. at 61-63. Each of these jobs were for six to seven months. Id. Plaintiff stopped working because she could no longer stand for more than 30 minutes due to back pain and dizziness and could not handle customers due to anxiety attacks.

As to her medical condition, Plaintiff has been treated at the Nashville Bone and Joint clinic since 2009. Id. at 538-67. In December 2009, an MRI of her lumbar spine revealed a small right paracentral disc protrusion at L5-S1 with some high T2 signal seen suggestive of acute annular ligament tearing, as well as small Tarlov cysts present within the thecal sac at S2 with mild dilation

of the nerve root sheath of the right S1 nerve root. Id. at 566.

In February 2010, a lumbar myelogram revealed a transitional segment at L5 which was extensively sacralized, as well as mild anterior compression on the thecal sac at L4-5 and a minimal protrusion at L3-4. Id. at 241. Similar findings were shown on a lumbar CT at the same time, as well as a Tarlov cyst of the right L5 nerve root sleeve. Id. at 242. Due to her persistence symptoms and despite treatment and injections, Dr. Schooley suggested a possible spinal cord stimulator trial in March 2010. Id. at 245.

In October 2011, Plaintiff underwent laparoscopy with lysis of adhesions and other diagnostic procedures. Id. at 476.

In March 2012, Plaintiff was treated for chronic back pain. Id. at 305. On March 21, 2012, Premier Radiology performed an MRI of Plaintiff's lumbar spine that reflected a mild disc bulge asymmetric toward the left with bilateral facet arthropathy, spondylosis and disc desiccation at L4-5 with a shallow central protrusion and annular tear effacing the thecal sac with mild lateral recess stenosis bilaterally, and a rudimentary disc at L5-S1. Id. at 305. In May 2012, Plaintiff was treated for left foot and ankle pain. Id. at 427-39. The treatment notes also show Plaintiff's extensive gynecological difficulties in 2012, among other things. Id. at 568-653. From November 29, 2012 to March 21, 2013, Plaintiff was also treated at the Mount Juliet Pain and Wellness clinic for persistent lower back pain, tailbone pain, and anxiety. Id. at 333-361. The treatment notes from Simply Care also show Plaintiff's complaints of pain, as well as abdominal pain and anxiety. Id. at 489-505.

In January 2013, Plaintiff underwent laparascopy with left salpingo-oophorectomy and lysis of adhesions due to chronic left lower quadrant pain unrelieved with conservative medical

management plus pelvic adhesions. Id. at 475. On February 22, 2013, Dr. Tif Siragusa of the Vein and Vascular Center of Nashville found the second toe on Plaintiff's right foot had turned blue after sitting with her foot in a dependent position for any length of time. Plaintiff had increased knee swelling with time on her feet. Considerable edema was noted on objected examination. Id. at 482-488. In March 2013, Plaintiff was also treated for low back, right hip, and knee pain.

Plaintiff sought treatment from Dr. Bigham as of April 2013 at Centers of Family Medicine for back and right knee pain that was helped by meidcations. Id. at 330. Dr. Bigham's diagnoses were vascular disease, arthritis, joint pain, degenerative disc problems, myalgia, and neuralgia, and Dr. Bigham prescribed pain relief medications. Id. at 332. On April 30, 2013, Plaintiff had a follow up examination. Id. at 327. In June 2013, Dr. Bigham noted anxiety and a number of other ailments for which Dr. Bigham prescribed medications. Id. at 321-23. Plaintiff followed up in July 2013 with the same diagnoses except for her increased anxiety. Id. at 318-20. In August 2013, Plaintiff noted that pain had been lowered by medications from "7/10;8/10 w/o meds" to "4/10 with meds and right now" and that "some of the medi[c]ation is helping." Id. at 315.

In September 2013, Plaintiff reported symptoms of panic attacks and dizziness, but told Dr. Bigham her "medication is helping." Id. at 518. In October 2013, Plaintiff reported heart rate problems, but her pain decreased to a "2/10" level with medications and 9/10 without medications. Id. at 515. In November 2013, Plaintiff stated her anxiety was "OK." Id. at 510. On December 12, 2013, Summit Medical Center records reflect Plaintiff was treated at the emergency department for left knee pain and swelling. Id. at 574.

By December 27, 2013, Plaintiff's pain had decreased to "2/10/ 3/10 with meds and right now" and her medication was helping. Id. at 506. Dr. Bigham's diagnoses were that Plaintiff has

5

knee and back pain, insomnia, anxiety, and abnormal weight gain. Id. at 508. Dr. Bigham prescribed Diazepam, Percocet, Clonazepam, Hydrochlorothiazide, Lyrica, Meloxicam, and Nortriptyline. Id. at 508, 512, 533, 536. Dr. Bigham ordered an MRI of Plaintiff's knee and found that Plaintiff had abnormal pain as well as episodes of nausea, vomiting, and diarrhea, and difficulties with anxiety, panic and keeping high heart rate. Id. at 506-537.

A January 3, 2014 MRI of Plaintiff's left knee revealed a moderate joint effusion with cartilage surface irregularity and focal cartilage fissuring over the patellar apex, as well as a small moderate Baker's type cyst. Id. at 539. These records also show diagnoses of right patella dislocation and possible reflex sympathetic dystrophy. Id. at 541. A January 2013 MRI of Plaintiff's right knee revealed a moderate joint effusion with patellar subluxation impaction injury with bone contusion to the femoral condyle and patella, as well as a tear of the medial patellofemoral ligament and thin wavy fibers superior to the patella which may represent torn superior patellar plica and/or portions of medial retinaculum. Id. at 548.

On January 13, 2014, Dr. Alicia Bigham, Plaintiff's treating physician, completed a Physical Medical Source Statement, finding Plaintiff could lift and/or carry less than 10 pounds occasionally or frequently, stand and walk a total of less than 2 hours, and sit less than 2 hours total during an 8-hour workday, with the need for an at-will sit/stand option and the need to lie down at unpredictable intervals at least once every hour. Id. at 654-56. Plaintiff could only sit for 10 minutes at a time. Id. at 654. Dr. Bigham opined Plaintiff would have to lie down "at least once every hour" and could stand for only 5 minutes and would need to change positions. Id. Plaintiff would have to walk around every 10 minutes for about 5 minutes. Id. Plaintiff would require unpredictable breaks during the workday. Id. Dr. Bigham also opined that Plaintiff could never twist, stoop,

crouch, or climb stairs and she had problems reaching and handling. Id. at 655. In Dr. Bigham's opinion, Plaintiff would miss more than four days of work per month. Id. at 656. Dr. Bigham cited Plaintiff's chronic back pain, irritable bowel syndrome, chronic muscle pain, and numbness, tingling and decreased use of her upper extremities and hands due to pain. Id. at 654-56.

### B. Conclusions of Law

The Social Security Act defines "disability" as an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1); see also 42 U.S.C. § 1382c(a)(3). A reviewing court's evaluation of the Commissioner's decision is based upon the entire record in the administrative hearing process. Jones v. Sec'y, Health and Human Servs., 945 F.2d 1365, 1369 (6th Cir. 1991). Judicial review is limited to a determination of whether substantial evidence exists in the record to support the Commissioner's decision, and whether any legal errors were committed in the process of reaching that decision. Landsaw v. Sec'y of Health and Human Servs., 803 F.2d 211, 213 (6th Cir. 1986). "Substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007) (quoting Cutlip v. Sec'y of Health & Human Servs., 25 F.3d 284, 286 (6th Cir. 1994)). Even if the evidence could also support a different conclusion, the ALJ's decision must stand, if substantial evidence supports the conclusion reached. Her v. Comm'r of Soc. Sec., 203 F.3d 388, 389-90 (6th Cir. 1999) (citing Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997)).

As to the ALJ's evaluation of Dr. Bigham's opinion as Plaintiff's treating physician, the SSA

has three classifications of medical sources: treating sources; examining but non-treating sources; and non-examining sources. 20 C.F.R. §§ 404.1527, 416.927; 20 C.F.R. §§ 404.1502, 416.902. A treating source has a history of medical treatment and an ongoing treatment relationship with the plaintiff consistent with accepted medical practice. 20 C.F.R. §§ 404.1502, 416.902. An examining non-treating source has examined the plaintiff, but does not have an ongoing treatment relationship. Id. A non-examining source is a physician, psychologist, or other acceptable medical source who has not examined the plaintiff, but provides a medical or other opinion based upon medical and treatment records. Id. An ALJ's rejection of a treating physician's opinion must be supported by "good reasons." SSR 96-2p.

The ALJ afforded Dr. Bigham's opinion little weight sighting her limited explanations on the completed form, her limited treatment record and its inconsistency with other medical proof. (Docket Entry No. 11, Administrative Record, at 47-48). The ALJ found Dr. Bigham's opinion to be based inordinately upon Plaintiff's self-reported complaints. Id. at 48. The ALJ noted that in her treatment records, Plaintiff denied weakness, swelling, and pain on examination. Id. at 48. The ALJ found that Dr. Bigham was not a treating physician for Plaintiff's lumbar condition. Id. at 48. In addition, the ALJ also cited the results of the consultative medical examination of Plaintiff. Id. at 48, 293.

From a review of the medical records, the March 2012 MRI showed only mild degenerative abnormalities. Id. at 305. The December 2013 note showed that Plaintiff denied weakness, myalgias, morning stiffness, and joint swelling. Id. at 507. The doctor noted Plaintiff's pain, backache, nervousness, and abnormal gait and stability. Id. at 507-508. Yet, the prior month's examination revealed a normal gait. Id. at 512. Inconsistency within treatment records is an

8

acceptable reason to give less weight to a treating doctor's opinion. See Sullivan v. Comm'r of Soc. Sec., 595 F.App'x 502, 507 (6th Cir. 2014) ("This court has previously held that it is proper for an ALJ to give a treating physician's opinion less-than-controlling weight where a claimant is 'unable to direct this court to any portion of the [treating physician's] records which support' the treating physician's ultimate opinion.") (citation omitted); see also Curler v. Comm'r of Soc. Sec., 561 F.App'x 464, 471 (6th Cir. 2014) ("Dr. Ingram left blank every available area for remarks and universally failed to include any references, notes, or test results.") (citing Turner v. Comm'r of Soc. Sec., 381 F.App'x 488, 492-93 (6th Cir. 2010)).

The ALJ also found that Dr. Bigham's opinions were contrary to Dr. Babar Parvez, who assessed Plaintiff's degenerative disc disease, her lumbar spine, right leg sciatic nerve cyst, and dysplastic colon. (Docket Entry No. 11, Administrative Record, at 295). Dr. Parvez found Plaintiff to have retained good muscle, grip strength, and possess a normal gait and a good range of motion. Id. Plaintiff could perform postural maneuvers, contrary to Dr. Bigham's opinion, and could complete her normal daily activities. Id. Dr. Parvez stated that Plaintiff could lift five to 10 pounds. Id. Applicable here is that, "[a]n administrative law judge may give more weight to the opinions of examining or consultative sources where the treating physician's opinion is not well-supported by the objective medical records." Dyer v. Soc. Sec. Admin., 568 F.App'x 422, 428 (6th Cir. 2014) (citing Gayheart v. Comm'r of Soc. Sec., 710 F.3d 365, 376, 379-80 (6th Cir. 2013)).

Plaintiff's next claim is that in assessing Plaintiff's residual functional capacity, the ALJ failed to recognize his earlier finding that Plaintiff had "moderate" concentration problems. Plaintiff cites the ALJ's evaluation on the Psychiatric Review Technique Form criteria to find that Plaintiff has **"moderate difficulties"** in maintaining concentration, persistence or pace. (Docket Entry No.

9

11, Administrative Record, at 41) (emphasis added). Yet, the ALJ failed to include this limitation in his residual functional capacity assessment and stated that Plaintiff "is able to understand, remember and complete high-level detailed tasks." Id. at 42. The Commissioner responds that the ALJ's findings on Plaintiff's "moderate" concentration problem applies only to the second step of the five step sequential evaluation. See 20 C.F.R. §§ 404.1520, 416.920. The Commissioner concedes that this finding means that Plaintiff has severe mental limitations.

"Residual functional capacity is an 'assessment of [the claimant's] remaining capacity for work,' once her limitations have been considered." Stankoski v. Astrue, 532 F.App'x 614, 619 (6th Cir. 2013) (quoting 20 C.F.R. § 416.945(a)). This assessment "describe[s] the claimant's residual abilities or what the claimant can do, not what maladies a claimant suffers from—though the maladies will certainly inform the ALJ's conclusion about the claimant's abilities." Id. (quoting Howard v. Comm'r of Soc. Sec., 276 F.3d 235, 240 (6th Cir.2002)). The residual functional capacity assessment must include those limitations that the ALJ found credible. See Poe v. Comm'r of Soc. Sec., 342 F.App'x 149, 155-56 (6th Cir. 2009); Casey v. Sec'y of Health & Human Servs., 987 F.2d 1230, 1235 (6th Cir. 1993) ("It is well established that an ALJ may pose hypothetical questions to a vocational expert and is required to incorporate only those limitations accepted as credible by the finder of fact.").

In addition to the five-step sequential process for generally evaluating a claimant's eligibility for benefits, the Commissioner has enacted regulations for mental impairments. See 20 C.F.R. § 416.920a. The Commissioner notes that the purpose of this separate analysis is to evaluate severity and determine whether an individual meets or equals a listing in 20 C.F.R., Part 404, Subpart P, Appendix 1. See 20 C.F.R. § 416.920a(d). Social Security Ruling 96-8p specifically states that

"[t]he adjudicator must remember that the limitations identified in the 'paragraph B' and 'paragraph C' criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process." Under this special procedure, the ALJ must evaluate allegations of mental impairment by identifying a claimant's limitations in four broad functional areas: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. See 20 C.F.R. § 416.920a. The ALJ's decision must reflect his rationale for his conclusions on the severity of the mental impairment. See 20 C.F.R. § 416.920a(c)(4).

The Commissioner argues that the residual functional capacity and credibility analysis provide the ALJ's explanation why Plaintiff is not more limited in that the ALJ considered Plaintiff's anxiety and Dr. Bigham's prescribed medications for Plaintiff's anxiety. (Docket Entry No. 11, Administrative Record, at 46). The Commissioner notes that at Plaintiff's December 2013 appointment with Dr. Bigham, Plaintiff reported that her medications were helping her anxiety. Id. at 506. Dr. Bigham did not note any abnormal psychological findings. Id. at 508, 512, 520, 526, 529, 532. Plaintiff also denied mood changes, depression, and insomnia. Id. at 507. The ALJ concluded that Plaintiff's anxiety and sleep problem were only partially credible. Yet, after his review of Dr. Bigham's medical records, the ALJ found that Plaintiff has in effect a severe concentration problem and that finding runs counter to the Commissioner's argument. Under the Commissioner's special procedure for mental development, the ALJ's decision would have to provide an express rationale on why Plaintiff's severe mental concentration impairment does not impact her residual functional capacity to work at the high level task found by the ALJ. The ALJ did not do so. With this conclusion, the Court deems a "sentence four" remand is necessary for an

express consideration by the ALJ of Plaintiff's severe mental concentration impairment. The Court also deems consideration of Plaintiff's other claims moot at this time subject to review after the remand. Thus, Plaintiff's motion for judgment on the administrative record (Docket Entry No. 13) should be denied as moot.

An appropriate Order is filed herewith.

**ENTERED** this the ___ day of October, 2016.

WILLIAM J. HAYNES, JR.
Senior United States District Judge